Good morning. May it please the court. James Buechel for the plaintiff appellants. If it is permissible with the court I'd like to save seven minutes for rebuttal. Okay we'll do our best to help you keep track and we'll see if that works. One way or the other we'll make sure both sides get a chance to say everything they need to say. I'll start by addressing the questions the court was interested in according to the clerk's order. With respect to municipal standing, we think there's a Ninth Circuit case that's pretty good on point. Kamek v. Waihe, where the it was alleged that the state of Hawaii was spending money on a good Friday holiday. We are alleging sort of a much larger expenditure where the entire school was sort of mobilized to create a political holiday. So we think that's sort of the same. A related question on municipal appropriation of funds. We think we've established that here. We've alleged sort of the misappropriation of instructional inventory, poster board and the like. We've alleged the misappropriation of administrative time in building websites and making propaganda videos and all sorts of other things. And of course we've alleged the hijacking of the class time and all the staff costs associated with that. I mean it's important to understand that the effort here went to the extent where they even reprogrammed the school bells so that they could create a special protest time in the middle of the day where no one could be marked absent. So it really was a total repurposing of the schools for this political purpose. And I understand that there weren't any checks written directly to the children to go out and demonstrate. And if that's required, that checks be written to the children, well then we lose. But I don't think that's required. And one can look at this not only as the speech of the children involved, but also as the speech of the staff who are essentially, it's like a form of when you have the managers of a corporation go and do something with it that's outside the business purpose. It's their private speech as well. And but for all of this misappropriation of taxpayer money, we would have had, you know, maybe a handful of students who go out in the street or something and they'd be marked absent and punished or whatever. And instead, we had the entire school system devoted to this. The doctrine of municipal standing has ancient roots in our jurisprudence as the United States versus New York case I put in the Rule 28J letter says, goes back to Frothingham versus Mellon. We have a direct and immediate interest in the expenditure of municipal funds. And it's important to understand that even under the more modern cases like the Johans case, the compelled subsidy analysis is supposed to be independent of whether this is a targeted assessment or some general tax assessment. And so that brings me to the case that the panel cited, Doe versus Madison School District. There were no appreciable costs involved there. That was a school prayer case. And the analogy to that case would be not just saying a what if we didn't do graduation? What if we had a whole instead of having a graduation, we just have sort of a revival meeting and a mass baptism. And then all of that expenditure and effort is devoted to doing that with the school instead of the normal graduation ceremony. So we think we've clearly established municipal standing. That's just a matter of degree, isn't it? I don't really understand the difference. So it seems like we have some cases, Doe seems to say if the whole school is religious, then that's something you can challenge. But if it's a piece of something that you can't really identify, I'm not sure why it matters if it's the whole graduation or just part of the graduation. That's sort of just a matter of degree of a smaller amorphous amount of money, right? Why would it matter if it's the whole graduation or just some of the graduation? Well, I think there's sort of a theme in the case is a sort of a de minimis constitutional violation. And my case here is this is not de minimis. This is a hijacking of the whole school for days on end and every class and then a definable part of a specific school day. And that's my case. It's not just a prayer to graduation. It's something much, much more substantial and much Let me chime in, Mr. Bukel. I hope you're well there. So I'm just curious as to where you draw the line here on the issue of standing. It doesn't seem to be such a black and white situation to me. So the combat case, I understand that that was a federal highway, federal holiday. I'm sorry. It was a paid federal holiday. The monies were used to pay state employees for the holiday. But in this case, I just wonder if you can point to any expenditures that were incurred solely due to the activities you are challenging. And the question is, do we need to have that type of expenditure here in order to support standing? I'm anxious to get your thoughts about that. I think we don't. I think we don't need that type of expenditure because it's some sort of identifiable, measurable amount. I've cited the 11th Circuit case and the Rule 28 J letter and some other cases to that effect. And I know there's a split in the circuits on this, I think, as to whether, as to how far to interpret this sort of dicta in doremus, which was invented. And so, but in the municipal context, I think it's long been recognized that there's this sort of direct and immediate interest in stopping illegal expenditures. And so if I can interrupt for just a moment, I think you're right that we do treat municipal standing different from standing, for example, of our federal taxpayer. I get all of that. But you need to show that the challenge activity results in additional spending, not just that the staff does one thing rather than another. How much additional spending? Is there something more than a fairly de minimis amount of additional spending? Well, I think that we have, this is a case decided on a motion to dismiss. So we don't have the facts. All right. So what's the, what's the allegation that's plausible of additional spending due to this activity that you seek to challenge? Well, the allegation is that all sorts of additional materials were prepared, entire websites, you know, thousands of posters, you know, videos, all these things. If I can, if I just a minute, that's not materials in the sense that you're not buying any paper, you're not buying any pens. There is staff time necessary to do that. But do you allege that this, that additional staff was hired and the payroll was increased? No, I do not. I would think that if we were allowed discovery, we would find that an overtime was incurred because of the scale of the effort here. Do you allege that there was overtime? I have not alleged that overtime was incurred. There has been no requirement in the law that a municipal taxpayer specifically allege an incremental expenditure. The entire line of authority is, was the expenditure that was made illegal? And because you can enjoin it, it is thought to redound to the direct benefit of the taxpayer. And there are lots of cases that say you don't have to show that your taxes would be lower. And so if there's lots of cases that show that your taxes don't have to be lower, the presumption is, yeah, there's a pile of money that municipality is gonna expend. We just want it spent legally and we have a direct and immediate interest in having it spent legally. So that's my case. Okay. Now, I noticed that we're already past the time you wish to save, but don't worry about that. Assuming standing for just a moment, the case was fairly clear that you can't challenge speech by the government. Well, let me offer you sort of... The government compels a private person to make, which is another claim you have. But I'm not sure even on the merits that you prevail in a claim that the government is doing speech with which you disagree. Well, let me say that the government speech doctrine is like a normative choice, okay? Are we going to regard particular speakers in particular contexts as sort of autonomous participants in an ongoing process of democratic self governance? Or are we gonna regard them as instrumentalities of the state? So you're making that normative choice when you invoke this doctrine. And I didn't invent that idea. That's something I stole out of the Yale Law Journal. There's a great article, 106th Yale Law Journal at 163. As a former academic, I have to say that I love law journals. On the other hand, as a source of law, they are somewhat questionable. Well, what I wanna say is that it was essential to the district's scheme here, that the district be seen as empowering what we call subsidizing private entities. That was the whole idea. We're going to listen to our students, you, the politicians, should listen to our students. These are private entities exercising their own will. And up until this case, that was the district's whole story. You need them to be the government or you don't have state action. It's not a constitutional violation, right? Unless you have state action. So are you saying that because they tried to make it seem like it was just the students, all of a sudden it's not the government anymore? I'm saying that the state action is in taking these staff people and in taking these students and in taking all these resources and creating this giant private speech event. I think it's really important that there's no dispute that this thing was illegal under state law. There's no dispute that was going... Have you sought any remedies under state law? I know you have this argument about it's illegal under state law, but I'm not sure what that does for us in federal court when you have federal claims. Well, the Summum case and lots of other cases say that to evaluate whether something is government speech or not, you look at whether it's legal. If it's some government official going off and flying to Hawaii with his mistress, that's not a government expenditure, right? But Judge Friesland's point is as soon as it's not government activity, you don't have a claim because it's not government activity. It's government activity because they're taking my client's money and they're using it for political motives, for a political purpose to hold... But then as soon as it's government activity, you're back into the soap because we've got a line of cases that says the government gets to say what it wants to say. Well, I don't think so because I think that you can take the factors that have violated state law. You can take the fact that it's not germane to the mission. I mean, if that were true, why would the Bar Association case have come out the way it did? Those are all government officials, but we looked at whether... What was it? A nuclear gun control, the Supreme Court's examples. We looked at whether those were germane to the Bar Association mission. We said, no, that's a compelled subsidy of speech. And even though it was... You could make this argument, well, they crossed the line. They said something about a nuclear freeze, so now there's no longer state action. I mean, I really don't get it. That's not really consistent with the case law as I see it. And so you take this triumvirate of the violation of state law, the non germaneness of the speech, the political motives, all of... I understand this doesn't fit into one of the pre existing First Amendment boxes, okay? It's something new and different because this is something that's sort of really a radical form of hijacking of government resources on a scale that has never been attempted before. Well, this has a somewhat unusual context in that we're talking about a particular political controversy, but we fight all the time as a society about what's taught in the schools. And the ordinary way to get at that is to elect a different school board member. Well, that's... And in Oregon, that's impossible. We've had so many decades of single party rule in Oregon that we have really no remedies. We are a distinct and insular political minority of a rather small political minority. We have no rights in the electorate. There's no political accountability that can save us. And really, there's no judicial accountability either in the state court system. I've been there a lot. I can tell you stories. It's we come to federal court for protection of our federal civil rights. And that's what this is about. So that's what I would say about that. The notion that we will regard the students and what's going on as instrumentalities of the state, to me, it's sort of like it's moving in a totalitarian direction in the sense that... Of being contrasted with a democratic state where the government derives its legitimacy from the idea that it's controlled by the people. And when you break that feedback loop and you say, no, we're going to turn... Starting in the... Reach down into the classrooms and reach into these politically contested issues and sort of manufacture the consent and manufacture the lobbying and manufacture these political things, you are, in my view, undermining democracy and you're undermining the purposes of the First Amendment. And it's a giant thumb on the scale, as it were. Senator Gell, look, I enjoy listening to your rhetoric. It's kind of interesting. I think there are lots of places in our country where the opposite effect is, where there's certain minorities that don't have the type of voice that they would wish to have, such as the nature of our political landscape. But I just wanna be clear about the principle that it must be government speech in order to justify your subsidization issue. I'm just not clear about that. No, I'm saying that what was going on here can't be construed as government speech because it was illegal, not germane to the mission undertaken for political motion purposes. And so it's to be regarded as outside this zone of the law. I'm gonna take this from Keller because Keller was not government speech. Joe Hans made really clear that the bar was not part of the government. I think it's not really in dispute that the school board is part of the government. Well, I think it is in dispute as far as I'm concerned, because both of them are special purpose organizations created under state law. So you think the school board is not part of the government? Then we get back to the state action question I had before. If the school board is not part of the government, I'm confused about what your claim is. It's part of the government, but think of the zone of what's called in the literature, the zone of managerial competence. We want the government to be able to speak on issues that are within its proper regime. But what case says that? What case says that there's a germaneness standard? Well, I would say even Johans does. I mean, in Johans, when Justice Scalia went through this, he was very clear that Congress has dictated this message about beef, promoting beef. And there's notice and comment rule making. And there's a secretary of agriculture who specifically approves all these messages. And the speech itself was the product of the democratic will passing the statute. Here we have the statutes say, put the kids in class, teach them respect for the constitution, make them go to school, not go out and foment mass action on the streets. Okay. And so you have, you have essentially, in our view, a rogue set of officials who are hijacking public resources. And they are doing it under color of state law. That's a classic. That's right in the civil civil rights statute itself. It's in the text of 1983, I think. Okay, I think we have your position pretty firmly in mind. We've taken you over time. Let's hear from the other side. But we will give you a chance to respond. Mr. Landau. Thank you. And may it please the court, Aaron Landau for the defendants appellees, Portland Public Schools, and its superintendent. I want to get to a couple of your questions posed to plaintiff's counsel. First, I want to make just a quick threshold comment that we continue to hear a great deal of rhetoric here about how, what is at issue here is the future of democracy. I want to just make clear this is a pleading case. The claim at issue here was dismissed for failure to allege facts sufficient to state a claim. And when the court dismissed the claim on that basis, it said, here are the facts that you're going to need to allege in order to state this kind of claim, and then expressly gave the plaintiffs the opportunity, gave them leave to replead. Plaintiffs opted not to plaintiffs counsel and said, are you sure? Let me interrupt. I think we understand. But we have to deal with this threshold standing issue. And the lower court sort of said there was standing, but I want to know what your position is. It seems to be a slippery slope and we have to sort of manage it. It's a jurisdictional matter. We have to deal with it, I suspect, one way or the other. How do you suggest we resolve it? As for standing under the compelled subsidy claim, the landmark case here is the Ninth Circuit's decision implying that... I'm talking about the subsidization issue, not the compelled issue. The issue of subsidization, that's the standing issue that we're concerned about. Right. And if I understand your question correctly, in both cases all require a measurable appropriation. There were several questions about, have you alleged a measurable appropriation? The answer here is no. Under the allegations of the complaint, the plaintiffs have talked about the teachers, for example, a science teacher, teaching the wrong thing, using science instructional time to teach something else. And as Judge Friedland pointed out... My apologies, I'm not being sufficiently clear. We have to resolve whether, I think there's no question they're standing on the compelled issue, but on the subsidization issue, we have to resolve that we have standing to address the merits of that. And the lower court really said that there was standing, and we're somewhat concerned about that. And I wanna get your position on that. If I understand your question correctly, we raised standing as to both claims in our motion to dismiss. The district court did not resolve it on that basis. I think part of the reason for that is because, particularly as to the compelled speech claim, standing and merits are pretty closely intertwined. Right. Maybe Judge Block wants a yes or no question. Do you think there is standing for these claims? I do not. I do not. Because standing purely depends on whether there are sufficient facts alleged in the complaint to show that there was injury, for instance, to these plaintiffs. How do you respond to the argument that we heard a moment ago, that in fact, there's sufficient allegation of additional expenditures by the school district to support this program? Not necessarily with overtime, because he says quite properly, well, we didn't actually plead overtime, so we don't have any additional payroll, but there may be some other things, printing up posters. I mean, there may well be some additional expenditures alleged in the complaint. How do you respond to that contention from the other side? I think this presents the same argument that the school district has about the things that are ordinarily necessary for the school to operate, whether you're talking about pens and pencils, whether you're talking about the electricity to keep the lights on, whether you're talking about equipment, building maintenance and the like. All of these things are going to be spent anyway. And the point of Doe and the Doremus case on which it's based is you need to point to something that would not have been spent. I understand that, but we've just heard that they're alleging that there are additional expenditures that would not otherwise have been made. Posters, I guess. How do you respond? Maybe you say, well, all of those allegations really aren't there. I mean, what is the response? Well, respectfully, I disagree that that's in the complaint. I understand the plaintiffs have said, for example, that students made posters and have alleged that posters were made with school supplies. I don't think that points to a measurable expenditure, as this court's cases describe it. So are we to assume that if they weren't making posters for this, they'd be making science posters for the science fair or something? I mean, what would the poster board be for otherwise? I expect that a school district has posters for just that reason, whether you're talking about a book report, whether you're talking about a science fair project. What plaintiffs have alleged is that things that are ordinarily used for school, whether it's school time, it's the school supplies, it's time in the cafeteria, those things would have happened anyway. Plaintiff's position is you're misusing those resources because you're using them to say the thing that I disagree with. I don't think that points to a measurable expenditure that wouldn't have happened otherwise. But we're dealing with this in the context of a 12B6 motion to dismiss, and I guess we have to take the complaints, pleading says two even if it may not be the case, ultimately. How do we resolve that type of issue in the context of the 12B6 motion to dismiss? I think the question is really whether the allegation has been made. And I don't think that it would be required. Plaintiff's counsel is like, well, wait a second, we haven't had a chance to do discovery. I don't think that's necessary. I don't think you need to produce receipts and say this was $12.30. I think you need to make the allegation. Obviously, we don't do discovery because it's 12B6. Is there room in the case law for us to say, well, we take the allegations as true, and we construe them generously. But the most that they show is that there's some small amount. And is there a sort of a de minimis exception to the standing rule for municipal standing? Well, I don't think that I've seen a de minimis exception here, although that would be appropriate given that this entire doctrine is sort of an outcropping of ordinary Article III standing. And there is a point at which injury is so small that you I think the same is probably true here. I don't think that the courts have delineated where that point is. Yeah, well, maybe we can go back to the language from, in fact, we got a citation to it, remote fluctuating and uncertain. I mean, that's where we start out with Frothingham, when the court denies standing, that the amount of expenditure at issue here is remote fluctuating and uncertain, therefore, no standing. Maybe that idea comes back into municipal standing, where the actual amount is uncertain, even under the allegation. That is to say, taking the complaint in as most generously in favor of the complaint, there's not much. I agree. And in fact, even if this court were to find that there is standing once you get to the merits, I think the problem has become really clear. Cases from this court and Supreme Court concerning compelled subsidy arise only where four things are present. The government has required the plaintiff to pay money to a third party. That third party has used those funds to engage in speech. The speech is not only something that the plaintiff disagrees with, but which is associated with the plaintiffs. With my apologies, I'm going to interrupt you once more. Can you hear me clearly enough? So I'm curious about the merits, because the position, of the government that's speaking, they can say whatever they wish in terms of the subsidy issue, so to speak. Are there any limiting principles at all to that principle that the school district or the government can say or teach whatever it wishes, and not have to be concerned about the First Amendment challenge in terms of the subsidization issue we're talking about? Was it just absolutely permissible for the government to speak however it wishes to speak, barring establishment clause issues, perhaps? Right. I think what you find under the case law is that there is not a limiting principle to that, because when it is the government speaking, the First Amendment simply does not control, because the First Amendment doesn't have anything to do with what the government can say when speaking as the government. I think there's a useful example here. If the government, we're talking a bit about government speech versus compelled speech. If the government tomorrow, if the Oregon legislature were to say, from here on out, Oregon's motto is guns are terrible, the government gets to say that, even though one might say that that flies in the face of the Second Amendment. What the government cannot do is say, all of Oregon's residents need to put a sign on their front door saying guns are terrible, because that would ascribe to me and to that speech. What if the school board said every Friday at all our schools will be a rally for the Democratic Party? I think that you have, well, first of all, I think that presents issues, a couple different issues. One is we're not just talking about benefit that goes directly toward a third party. You're talking about a political party that would, among other things, contravene Oregon's guarantee of free and fair elections. Cases have found that the government can't do that sort of thing, but they've come at it from lots of different angles. And most common is the free and fair elections clause in Oregon's constitution. That's not what's issue here. That would be problematic, certainly, for a number of reasons, as Judge Fletcher said. It sounds like you're saying it's a state law problem, not a municipal taxpayer standing subsidy problem. The state can, I don't think it raises First Amendment issues. I think it is it might be a compelled speech problem. It's a party rally every Friday that the students are supposed to be at school. Well, certainly if students are required to attend. That actually brings me to the part of your case that I think is a little harder for me. And that is the argument that this is compelled speech compelling the students to speak, those who really disagree with the school board's message. And we do know that the school board is not entitled to compel speech or to put undue, here's the word, undue pressure on the students to agree with what's being said. How do you respond to that one? I want to make sure that I'm not misunderstanding your question. Can you? Yeah, the argument is that the school board cannot tell the students what the students have to say. Sure. And the argument is that this campaign by the school board against or in favor of gun control is in the environment of the school pressuring students with this who disagree with the message in such a way that they are in a way compelling the speech of the students. So I think what the so the students say, hey, I don't want any part of this. I'm going to the cafeteria. The stigma in the school attached to, hey, I like guns, I hate gun control, that that's really too much pressure on the students. So it's called compelling speech by the student. That's the argument. Certainly. And I think you have articulated the point of argument correctly. And I think that's a threshold question at issue in this case is whether that's enough. And the case law so far says that actual compulsion means actual compulsion. What you need is for the school, for example, in Judge Friedland's example, what if the school were to require everybody to attend a rally on Friday afternoons? Well, if the school is requiring students to attend, it is compelling them say it's you're going to get a different grade if you don't go or you'll be subject to discipline. That's a problem. That's compulsion. The problem in this case is that wasn't alleged. A lot of students care less about their bad grades than they do about peer pressure, which is something where 90 percent of the students are in favor of gun control, which may very well be true in the school. The 10 percent may feel actually enormous pressure to comply much more than they would feel, hey, I'm going to give you a zero for the day. And our point is that's not enough. Peer pressure is not enough, even though giving a zero for the day, in your view, is enough. Yes, because I think under the case law, when you when the state is actually exercising its power to, for example, give a student an A or an F and it is wielding that power to compel conduct, you have compulsion. If if you have subjective feelings of pressure, I think it gets too mushy. I think the case law so far has said that's simply not enough. Is that because peers are not state actors or what's the reason that the pressure from other students doesn't count? I think if you say the answer is your peers aren't state actors, I think what plaintiffs would say is we're not talking about the peers actions. We're talking about the government's action. But if I think you can't have it both ways, what you're concerned about is peer pressure. That's not the government. If what you're talking about is what the government is doing, you need to ask what is the mode of compulsion? How is the government compelling conduct? But if but if I'm understanding the plaintiff's argument correctly, it's the school board that has, through the mechanism of peer pressure, reduced the pressure. I mean, if you like, it's a cat's paw theory. The government is not doing it directly, but is using the social dynamic among the students to produce the pressures. The government that's put this put this in motion. So how do you respond? Let me answer you this way. There has not yet been a case so far in which a court has been willing to go that far. No, no case of which we're aware has ever gone that far to say that compulsion encompasses things like that. If this court were to do it, it would be first. There is nothing in the existing law that would prohibit the court from reaching that conclusion. I just think it would be wrong under the case law. So on that point, do you think that it's a standing question or a merits question? Like, would it make sense to say this pressure and the emotional strain it causes is enough for standing, but on the merits, it's not compulsion? Is that how you would do it? Or would you say there isn't even standing because the issue doesn't even count? Your question points to a problem that we noted in our motion to dismiss, which is the standing and the merits are really closely intertwined here. And the fact that they cannot show a First Amendment violation is part and parcel of why standing doesn't exist in this case. I think it causes the plaintiff's claim to fail on both grounds to answer your question. OK, any further questions from the bench? Thank you very much, Mr. Buchholz. Let's put two minutes on the clock for you. That's not quite the seven minutes you'd thought, but let's start with two, see what happens. I'll take what I can get and I'll just make one point for each judge, as it were. First Judge Block, I think you're right to try and articulate some limitations on this doctrine of government speech. It cannot be the law that just because a government person says something that automatically all bets are off. And I've cited all the case law about illegal understate law, about non-germaneness, about collateral political motives. There's not one like this, but all of those are big themes in First Amendment jurisprudence. And I see your lips are moving, but I can't hear you. Can you hear me? Maybe I... Now I can. Sorry. Yeah, it freezes once in a while. I'm sorry. You can hear me, though, OK? Go ahead. So you're right to look for limits there. Judge Friedland, you seem concerned about state action, but I want to focus you like a laser on the text of the statute we're suing under, which is that every person who under color of any statute, ordinance, regulates, regulation, custom or usage of any state subjects or causes to be subjected any citizen to deprivation of rights. And so this sharp thing you're trying to draw with, you know, it's a government official, it's not a government official. The color of state law, the fact that the school district itself is invoked in this fashion is, I think, easily enough for state action under the allegations we're making. And Judge Fletcher, I think you're right to focus on this idea of pressure because there are the cases like Laird versus Tatum and so that, you know, want some sort of formal punishment. But most of those cases deal with, you know, adults. Laird versus Tatum is a CIA surveillance case, isn't it? Yeah. Yeah, I think so. And it's sort of a mushy... I don't see a relevance here, but go ahead. Well, that was one of the cases that said, you know, you haven't shown this concrete adverse consequence, like a punishment or a bar of some kind. And my point was that that's something that has sometimes been applied in the adult context, but never in a context involving children. That's all I was going to say. We didn't talk to you about really the compelled speech claim in the first part of your argument. And I would just like to ask you if any of the students were punished or in any way reprimanded by the school for not attending this rally? Not that I know of. They were punished by their fellow students. You know, you want us all to die. And that punishment they received from the fellow students was a product of the... It was engineered by the district. And what about... So did any of the students who are your plaintiffs go to the rally, even though they didn't want to? Yes, one of them did, because the classroom door was locked. But I couldn't get in touch with her in time to put in that declaration. So we don't have an allegation or a declaration that tells us that someone who didn't want to actually participated in the speech? You have an offer of proof from me because nobody raised the standing issue as a distinct issue until a week before the argument. Mr. Butchow, let me let me ask you this question. This was a series of protest marches that was, I think, throughout the United States. And I think if I remember correctly, they all emanated from Florida, the Parkland shooting in Florida. So if your position is adopted by us on the compelled speech concept, would that mean that all of these protest marches throughout the United States during that period of time were unlawful? No, there were many school districts who said, we're not going to get involved in that. And if you go out and do that demonstration, we'll punish you. There's other school districts that we're not going to get involved in that. I don't know of any other district that literally sent the orders down from on high that every single one of our schools in the entire city and all 50,000 students are going to get with the program. But I get it. But I think the peer pressure was almost universal throughout the United States. I mean, they were all part and parcel of a cause, so to speak, for lack of a better word. And I think that I'm just troubled about how you draw a line here when you talk about peer pressure. It was inherent in the in the outgrowth from the Parkland shootings. The question is whether the peer pressure was engineered through like little emotional outburst circles and reenactments and all this kind of stuff, or whether it was just something that, you know, students watch TV and so they felt the way they did. My case is that this whole thing was engineered from the top down at enormous expense and through an enormous allocation of resources. It was, for a time, the only mission of the schools. Okay. Any further questions from the bench? No. Thank both sides for their useful arguments. The case of Burwell versus Portland School District number IJ, 1J, submitted for decision. Thanks very much. Thank you.
judges: W. Fletcher, Friedland, Block